NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0290n.06

No. 25-1898

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 07, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| JAEONTAE MOORE, | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: MOORE, NALBANDIAN, and MATHIS, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** An off-duty police officer saw Jaeontae Moore brandish a firearm in a car while arguing with the car's driver. Officers attempted to arrest Moore, but he fled the scene. The officers searched the vehicle without a warrant and found the firearm under the front passenger seat. Moore was indicted for possessing a firearm as a felon. He moved to suppress the firearm, arguing that the seizure and search of the car, which led to the discovery of the firearm, violated the Fourth Amendment. The district court denied the motion, and Moore later appealed. For the reasons that follow, we **AFFIRM** the district court's denial of Moore's motion to suppress.

**I. BACKGROUND**

On May 5, 2024, Detective Ondreya Anderson was running the Kalamazoo half marathon. R. 37-1 (State Ct. Hr'g Tr. at 9:5–18) (Page ID #75). While running, she saw a car that was

"rocking back and forth," which drew her attention. *Id.* at 10:1–25 (Page ID #76). As she continued running towards the car, she saw that Moore and Tonya Parker, Moore's mother, were arguing in the car. *Id.* Parker was in the driver's seat, and Moore was in the front passenger seat. *Id.* at 10:8–10. Parker and Moore were "raising their voice[s]" and Moore was "beating his hands on the dashboard." *Id.* at 10:14–17. At that point, Anderson was less than five feet from the car and saw Moore pull a firearm from his waistband. *Id.* at 10:19–11:5 (Page ID #76–77). Anderson "yelled[] 'gun'" and crouched behind a car that was close to Parker's car. *Id.* at 11:7–13 (Page ID #77). Another runner went to inform nearby officers of the situation, and Anderson remained crouched in a position that allowed her to see Parker's car. *Id.* Anderson then saw Parker exit the car looking "visibly upset," and Anderson believed that Parker was trying "to create some distance between her[self]" and Moore, who remained in the car. *Id.* at 11:23–12:3 (Page ID #77–78). At that point, Officer Straka, dressed in his police uniform, began approaching the scene, which seemingly prompted Parker to get back into her car. *Id.* at 12:4–10, 40:1–6 (Page ID #78, 106). When Straka was near the car, he drew his firearm and Moore exited the car. *Id.* at 13:1–20, 37:9–20 (Page ID #79, 103). Straka attempted to detain Moore, but Moore was able to get away and "took off running." *Id.* at 13:1–20 (Page ID #79). Straka ran after Moore and believed that Moore may have been armed "due to the information [he] was given," but he did not see a gun on Moore's person. *Id.* at 14:11–21, 41:3–6, 43:23–44:1 (Page ID #80, 107, 109–10). A K9 unit was deployed to track Moore after he fled. *Id.* at 41:10–14 (Page ID #107).

Although neither party cites evidence that establishes the precise order of events after Moore fled the scene, the officers then searched the car because they believed that they "had probable cause for a felonious assault." *Id.* at 30:1–12 (Page ID #96). The firearm was not visible

from outside of the car, but officers found a loaded .380 caliber Ruger LCP semi-automatic pistol under the front passenger seat of the vehicle. *Id.* at 30:1–12, 33:1–10 (Page ID #96, 99); R. 50 (Am. Plea Agreement at 3) (Page ID #206). During the search, officers handcuffed Parker and prevented her from getting into the car and driving away until the search was completed. R. 70 (Mot. to Suppress Hr'g Tr. at 7:18–8:11) (Page ID #312–13). Neither party cites evidence that establishes how much time elapsed between Anderson seeing Moore draw the gun and officers completing the search of the vehicle, but the record suggests that the officers acted promptly. Eventually, Moore was found hiding "underneath a boat" without a firearm. R. 37-1 (State Ct. Hr'g Tr. at 68:3–15, 76:13–16) (Page ID #134, 142).

Moore was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and 18 U.S.C. § 924(a)(8). R. 1 (Indictment at 1) (Page ID #1). Moore moved to suppress the firearm, arguing that "law enforcement exceeded the permissible scope of the initial . . . seizure of the vehicle before the vehicle was searched" and the "warrantless search of the automobile" violated the Fourth Amendment. R. 36 (Mot. to Suppress Br. at 3) (Page ID #54). The district court held an evidentiary hearing on the motion and ultimately denied it, reasoning that Moore did not have a reasonable expectation of privacy in the car and that the warrantless search was justified under the automobile exception because there was probable cause. R. 70 (Mot. to Suppress Hr'g Tr. at 21:12–28:21) (Page ID #326–33).

Following the denial of the motion to suppress, Moore entered a conditional plea agreement that preserved his right to appeal that decision. R. 50 (Am. Plea Agreement at 1) (Page ID #204). The district court ultimately sentenced Moore to 48 months of imprisonment, R. 66 (Judgment at

2) (Page ID #284), and Moore appealed the denial of his motion to suppress, R. 68 (Notice of Appeal) (Page ID #302).

## II. ANALYSIS

"On a motion to suppress, we review a district court's factual findings for clear error and the district court's legal conclusions de novo." *United States v. Stepp*, 680 F.3d 651, 660 (6th Cir. 2012). Whether there was probable cause for a search or seizure "is a mixed question of law and fact which we review de novo." *United States v. Dixson*, No. 23-1400, 2024 WL 2974483, at *3 (6th Cir. June 13, 2024) (citing *United States v. Pacheco*, 841 F.3d 384, 389 (6th Cir. 2016)). Additionally, "[b]ecause the district court denied the motion to suppress, we weigh the evidence in the light most favorable to the government." *Stepp*, 680 F.3d at 660.

The Fourth Amendment protects against unreasonable searches and seizures. *California v. Acevedo*, 500 U.S. 565, 569 (1991). "Generally, this right requires law enforcement to obtain a warrant before conducting a search." *United States v. Woods*, 168 F.4th 952, 954 (6th Cir. 2026). There are, however, limited exceptions to the warrant requirement. One such exception allows warrantless stops and searches of automobiles on public roads if there is probable cause to believe that the car contains evidence of a crime. *Id.*; *Acevedo*, 500 U.S. at 570 ("[I]f the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may . . . search . . . the vehicle."); *Almeida-Sanchez v. United States*, 413 U.S. 266, 269 (1973) ("It is settled, of course, that a stop and search of a moving automobile can be made without a warrant" as long as there is probable cause.).

There is probable cause to stop and search a vehicle if there is a "fair probability" that the car "contains evidence of a crime." *Woods*, 168 F.4th at 954 (quoting *Illinois v. Gates*, 462 U.S.

213, 238 (1983)). There must be "reasonable grounds for belief" that there will be evidence of a crime in the vehicle that is "supported by less than *prima facie* proof but more than mere suspicion." *United States v. Lyons*, 687 F.3d 754, 764 (6th Cir. 2012) (quoting *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998)).

Moore contends that the officers violated the Fourth Amendment by searching the vehicle without probable cause or a warrant and by exceeding the scope of the initial seizure of the car.[1] Appellant Br. at 12–15. We begin with the question of probable cause and conclude that under *United States v. Woods*, there was probable cause to stop and search the vehicle. In *Woods*, the officers received information that Woods had assaulted his girlfriend and "had a gun" at an apartment complex. 168 F.4th at 953. Woods's girlfriend told the officers that Woods had pointed the gun at her, so the gun was "evidence" of the assault. *Id.* at 953–55. The officers were informed that Woods drove an orange Dodge, but not that Woods or the gun were in the vehicle or that he had been in the vehicle recently. *Id.* at 954. The officers searched the apartment complex but did not locate Woods or the gun. *Id.* Eventually, they found Woods in his car and searched him, but they still did not find the gun. *Id.* The officers then searched the car and found the gun under the seat. *Id.* We held that the search did not violate the Fourth Amendment because the officers had probable cause to believe that the gun was in the car. *Id.* at 954–55. We explained that, under the

---

[1]Moore also argues that the district court erred in holding that he did not have a reasonable expectation of privacy in the vehicle, which he refers to as "standing." Appellant Br. at 10–12. Courts often use "Fourth Amendment 'standing'" as a "shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search." *Byrd v. United States*, 584 U.S. 395, 410 (2018). The term, however, is a bit of a misnomer because the question "is not a jurisdictional [one]," but is instead an issue of "substantive Fourth Amendment doctrine." *Id.* at 411. Therefore, it "need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim." *Id.* Because we are "not required to assess [Moore's] reasonable expectation of privacy in the . . . car before . . . addressing whether there was probable cause for the search" or a need for a warrant, *id.*, we proceed on the assumption that Moore had a reasonable expectation of privacy in the vehicle because, even if he did, he has not shown that the officers violated the Fourth Amendment.

"fair probability" standard, the officers "d[id not] need to eliminate all other possible places where evidence might be located." *Id.* at 955. Therefore, that "there were other places where Woods could have stashed his gun" did not defeat a finding of probable cause. *Id.*

As in *Woods*, the officers here reasonably believed that the firearm was evidence of an assault because Moore brandished it while in a heated verbal altercation with Parker, who exited the car looking "visibly upset." R. 37-1 (State Ct. Hr'g Tr. at 10:1–12:3) (Page ID #76–78). Additionally, an officer saw Moore with the firearm while he was in the car, and the officers did not see the firearm on Moore's person when he exited the vehicle and fled. Thus, the car was the last place that the officers knew the firearm had been. True, unlike in *Woods*, the officers here seemingly did not locate and search Moore before they searched the vehicle. That distinction does not call for a different outcome here because an officer actually saw the firearm while Moore was in the car, in contrast with *Woods* where no witness or officer saw the firearm in the car. That created an arguably greater probability here that the firearm would be in the car than existed in *Woods*. Therefore, there was probable cause to stop and search the car.

Moore also contends that because the officers had sufficient time to obtain a warrant, searching the car without one violated the Fourth Amendment. Appellant Br. at 15. "The automobile exception[, however,] applies even in nonexigent circumstances," so the fact that the officers may have had time to get a warrant for the seemingly brief search and seizure of the car is irrelevant. *Lyons*, 687 F.3d at 770.

Finally, Moore argues that "law enforcement exceeded the scope of the initial seizure of the vehicle once [Moore] had fled the scene" by refusing to allow Parker to get into her vehicle and drive away before the officers completed the search. Appellant Br. at 13. But, as already

explained, the officers had probable cause to believe that the car contained evidence of a crime throughout the entire seizure and search of the vehicle. The probable cause did not evaporate when Moore fled the scene; there was still a fair probability that the officers would find the firearm in the car. That allowed the officers temporarily to detain and search the vehicle. *Acevedo*, 500 U.S. at 570; *Almeida-Sanchez*, 413 U.S. at 269. Moore points to no evidence that officers took an unreasonable amount of time to begin or conduct the search or that the officers continued to detain the vehicle unnecessarily after they had searched it. Absent such evidence, probable cause justified the search and temporary seizure of the vehicle.[2]

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the denial of Moore's motion to suppress.

---

[2]To the extent that Moore challenges the seizure of Parker's person during the search, "defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their *own* Fourth Amendment rights have in fact been violated." *United States v. Salvucci*, 448 U.S. 83, 85 (1980) (emphasis added).